**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BUC-EE'S, LTD., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 15-CV-3704 |
| | § | |
| SHEPHERD RETAIL, INC, et al., | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

On January 13, 2017, United States District Judge Keith P. Ellison referred

Defendants' motion for partial summary judgment, ECF No. 74-13, pursuant to

28 U.S.C. § 636(b)(1)(B). Order of Referral, ECF No. 117. The Court recommends

that Defendants' motion should be granted in part and denied in part.

## I.      BACKGROUND

This is a trademark infringement and unfair competition suit. Buc-ee's, Ltd.

("Buc-ee's") has gas stations with convenience stores, which sell food and

merchandise, located throughout Texas. Resp. Mot. Summ. J., Ex. 1 8:15-23, ECF

No. 85-2 (testimony of Arch Aplin, owner of Buc-ee's). In 1982, Buc-ee's

developed a logo design of a buck-toothed cartoon beaver wearing a red hat inside

of a yellow circle (referred to as the "Buc-ee's Marks"). *Id.* Ex. 1 109:3-9, ECF

1

No. 85-2 (testimony of Arch Aplin, owner of Buc-ee's); Ex. 3, ECF No. 85-4 (certificate of trademark). Buc-ee's owns three registrations with the United States Patent and Trademark Office ("PTO")[1] and four with the Texas Secretary of State.[2] *Id.* Ex. 3, ECF No. 85-4. Buc-ee's uses these marks in connection with marketing and selling its goods and services.

Defendants have restaurants and gas stations with convenience store services, which sell food and merchandise. Defendants developed a mark in 2012 to be used in connection with these services. This mark features a green cartoon alligator wearing a cowboy hat inside of a yellow circle (referred to as the "Alligator Logos"). Mot. Summ. J., ECF No. 74-1 (certificates of marks from PTO). Defendants assert that they are the owners of the two registrations for service marks with the PTO. Mot. Summ. J., ECF No. 74-13 at p.2. Defendants also use a few variations of the Alligator Logo throughout the restaurant and travel centers which are not registered with the PTO. Mot. Summ. J., p. 5 & ECF No. 74-8 & 9.

Buc-ee's claims that, when Defendants originally designed the Alligator Logo, they did not use elements of the Buc-ee's Marks. Buc-ee's claims that the

---

[1] Registration Nos. 3,246,893; 4,007,064; and 4,316,461.

[2] Registration Numbers TX 800651507, TX 800651502, TX 800651500, and TX 800478206.

graphic designer was instructed to incorporate elements of the Buc-ee's marks. *Id.*

Ex. 14 16:21-17:5, 24:4-9, 25:3-9, 28:10-29:4, 31:7-14, 41:18-42:14, ECF No. 85-

15 (deposition of Gerard Bowden, graphic designer of Alligator Logos). Buc-ee's

argues that Defendants' use of the Alligator Logos infringes on and dilutes the

Buc-ee's Marks. Third Am. Compl., ¶¶ 53-75, ECF No. 78.

Buc-ee's filed suit against eight Defendants, who are the various owners and

operators of travel centers, gas stations, restaurants, and convenience stores that

use the Alligator Logos. *Id.* ¶¶ 8-15.[3] Buc-ee's alleges various trade mark

infringement and dilution claims under federal and state law, including federal

trademark infringement, false designation of origin, and unfair competition under

15 U.S.C. §§ 1114 and 1125(a); and state law trademark infringement under

§ 16.102. *Id.* ¶¶ 53-81. Buc-ee's also seeks a permanent injunction prohibiting

Defendants from using the Alligator Logos. *Id.* ¶¶ 82-86.

Defendants moved for partial summary judgment on Buc-ee's claims under

state law for trademark dilution, unjust enrichment, and misappropriation. Mot.

Summ. J., ECF No. 74-13.

---

[3] Shepherd Retail, Inc. ("Shepherd Retail"); Blanco Restaurant, Inc.; Live Oak Retail, Inc.; Mariam, Inc., S.W. Retail, Inc.' Falfurrias Highway Foods, Inc.; and Highway 46 Retail, Inc. own and operate gas stations, travel centers and/or convenience stores. Third Am. Compl., ¶¶ 6-10, 12-15, ECF No. 78. Harlow Food, Inc. is involved with the operation of a travel center and a restaurant. *Id.* ¶ 11.

## II.     SUMMARY JUDGMENT STANDARD

A motion for summary judgment requires a court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. Fed. R. Civ. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (the question is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented").

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford*, 234 F. 3d at 902; *accord Anderson*, 744 U.S. at 252 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict.").

## III.     ANALYSIS

Defendants argue the Court should grant it summary judgment because the federal registration defense bars Buc-ee's state law dilution claim. In addition, Defendants assert that Buc-ee's cannot establish an essential element, that its mark was famous prior to Defendants' first use of their marks. Mot. Summ. J., pp. 7-11, ECF No. 74-13. Defendants assert that they are entitled to summary judgment on the unjust enrichment claim because, among other things, Buc-ee's cannot show any lost profits after 2012. *Id.* at 12-13. These arguments are without merit. Finally, Defendants move for summary judgment on Buc-ee's misappropriation of a trademark claim, which should be granted because no such claim exists under Texas law.

### A.     Buc-ee's State Law Dilution Claim Is Not Barred by the Federal Registration Defense

"Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product." *Dall. Cowboys Football Club, Ltd. v. Am.'s Team Props., Inc.*, 616 F. Supp. 2d 622, 642 (N.D. Tex. 2009). Federal and Texas law protect an owner's "famous" marks against dilution. 15 U.S.C. § 1125(c); Tex. Bus. & Com. Code § 16.103.[4] Buc-ee's has alleged dilution through blurring.

---

[4] Tex. Bus. & Com. Code § 16.103 was recently recodified from § 16.29 "to make the Texas dilution standard substantially consistent with federal law, including changing the dilution

5

Dilution through blurring occurs with the "diminution in the uniqueness or individuality of a mark because of its use on unrelated goods." *Dall. Cowboys*, 616 F. Supp. 2d at 9642; Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:69 (4th ed.) (hereinafter "*McCarthy*"). Professor McCarthy explains the principle of dilution by blurring claim as follows:

> [I]f customers or prospective customers see the plaintiff's famous mark used by other persons to identify other sources for many different goods and services, then the ability of the famous mark to clearly identify and distinguish only one source might be "diluted" or weakened. This diminution of the strength of the famous mark could occur even though no confusion as to source, sponsorship, affiliation or connection has occurred.

*Id.*

### 1. Defendants cannot use the federal registration defense because Buc-ee's is simultaneously seeking to cancel the registrations

Defendants assert that Buc-ee's dilution claim is barred because Defendants have federally registered their Alligator Logos. *Id.* Buc-ee's claims that the federal registration defense does not apply because it is simultaneously seeking to cancel the Alligator Logos with the Trademark Trial & Appeal Board ("TTAB"). Resp. Mot. Summ. J., Ex. 20, ECF No. 85-21.

---

analysis so that only famous—as opposed to distinctive—marks receive protection from dilution." *Bulbs 4 E. Side, Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1172 (S.D. Tex. 2016) (Harmon, J.) (quoting *US Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-cv-2843, 2013 WL 4504754, at *20 (N.D. Tex. Aug. 20, 2013) (citing Notes to Tex. Bus & Com. Code § 16.103)) (internal citations omitted).

The Lanham Act bars a state law dilution claim where the allegations are based on the defendant's use of its federally registered trademark. This provision reads:

> The *ownership by a person of a valid registration* . . . on the principal register under this chapter shall be a complete bar to an action against that person, *with respect to that mark*, that—
>
> (A) is brought by another person under the common law or a statute of a State; and
>
> (B) (i) seeks to prevent dilution by blurring or dilution by tarnishment; or
>
> (ii) asserts any claim of actual or likely damage or harm to the distinctiveness or reputation of a mark, label, or form of advertisement.

15 U.S.C. § 1125(c)(6) (emphasis added).[5] The federal registration defense provides an incentive for the federal registration of marks. H.R. Rep. No. 104-374, 1996 U.S.C.C.A.N. 1029, 1034 (Nov. 30, 1995).

The two Alligator Logos are federally registered. Mot. Summ. J., Ex. A, ECF No. 74-1 (copies of certificates of registrations issued in 2016 to Shepherd Retail for Registration Nos. 4,446,867 and 5,010931). At first glance, it appears

---

[5] Section 1125 was amended on October 6, 2006, to change subsection (c)(3) to (c)(6). This change did not omit any language to what was required to use the federal registration defense. It added additional language to clarify the types of state law dilution claims under subsections (c)(6)(A) and (B) that would be barred by the federal registration defense. *Compare* 15 U.S.C. § 1125(c)(6) *with* § 1125(c)(3) (repealed Oct. 6, 2006). This change did not alter how courts have interpreted the federal registration defense. *See, e.g., Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 635 n.4 (9th Cir. 2008); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 424 (6th Cir. 1999).

that Defendants' federal registration bars Buc-ee's state law dilution claim. *See* 15 U.S.C. § 1125(c)(6); *Westchester Media*, 103 F. Supp. 2d at 977.

A number of exceptions, however, prevent Defendants from asserting this defense. Most notably, a defendant cannot use the federal registration defense to bar a state law dilution claim when the plaintiff simultaneously seeks to cancel the mark's federal registration. *Jada Toys*, 518 F.3d at 635 n.4 ("if Mattel can succeed in obtaining that cancellation, the bar to state unfair competition actions found in 15 U.S.C. § 1125(c)(6) will be inapplicable"); *V.V.V. & Sons Edible Oils Ltd. v. Meenakshi Overseas LLC*, No. 2:14-cv-296, 2016 WL 1268008, at *11 (E.D. Cal. Mar. 31, 2016) ("Because VVV is currently seeking to cancel Meenakshi's registrations, . . . 15 U.S.C. section 1125(c)(6) does not bar it from bringing a California dilution claim."); *see Waiter.com, Inc. v. Waitr, Inc.*, No. 2:16-CV-01041, 2016 WL 7443656, at *5 (W.D. La. Dec. 22, 2016) (recognizing that the plaintiff could have brought a state law dilution claim because it also sought to cancel the registered mark under 15 U.S.C. § 1119).

When a plaintiff seeks to cancel the federal registration, courts allow a state law dilution claim to proceed to trial because, if the plaintiff succeeds in cancelling the registration at trial, the federal registration defense would not apply. *See Jet, Inc.*, 165 F.3d at 424. When a plaintiff files a claim to cancel the mark, the federal registration defense, that would otherwise bar a state law dilution claim, is

temporarily blocked. *See Sanofi-Aventis*, 453 F. Supp. 2d at 854. In such instances, courts will deny a motion to dismiss or for summary judgment based on the federal registration defense as a bar to a state law dilution claim pending the outcome of the cancelation claim at trial. *See id.* If the plaintiff succeeds in establishing infringement and cancelling the mark at trial, then the fact-finder can determine the merits of the state law dilution claim. *See id.* If the plaintiff does not succeed in its claim to cancel the registration, then the federal registration defense bars the fact-finder from considering the state law dilution claim.

Buc-ee's has not filed a claim in this Court to cancel the two Alligator Logo registrations. Rather, it filed a cancellation petition with the TTAB. Resp. Mot. Summ. J., Ex. 20, ECF No. 85-21 Buc-ee's petition before the TTAB still serves to temporarily block the federal registration defense because Buc-ee's infringement claims pending in this Court will have a bearing on the TTAB cancellation proceeding. *See V.V.V. & Sons Edible Oils*, 2016 WL 1268008, at *11 (denying motion to dismiss based on federal registration defense because the plaintiff simultaneously seeking to cancel the registrations before the TTAB).[6]

---

[6] Defendants incorrectly argue that this case is not instructive because it determined whether to stay the case pending the result in the TTAB proceeding. Reply Mot. Summ. J., p. 2, ECF No. 89. The defendant in *V.V.V. & Sons Edible Oils* was attempting to stay the proceedings, but it also sought to dismiss the state law dilution claim based on the federal registration defense. *See* 2016 WL 1268008 at *11.

Both Buc-ee's infringement claims in this Court and its petition to cancel the marks under § 1052(d) before the TTAB are based on a likelihood of confusion. Third Am. Compl., ¶¶ 59-73, ECF No. 78; Resp. Mot. Summ. J., Ex. 20. The determination in both instances is identical. *B & B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1307 (2015) (The "likelihood of confusion for purposes of registration [and cancellation] is the same standard as likelihood of confusion for purposes of infringement."); *Tillamook Country Smoker, Inc. v. Tillamook Cnty. Creamery Ass'n,* 465 F.3d 1102, 1111 (9th Cir. 2006) ("Under [] 15 U.S.C.A. § 1052(d), the test for trademark registration uses the same 'likelihood of confusion' standard as the test for trademark infringement," under § 1114); *McCarthy* § 23:78 ("The statutory test of likelihood of confusion for a bar to registration [and to cancel a registration] and for infringement are worded slightly differently. But the test is the same.").

Based on collateral estoppel or issue preclusion, a finding in federal court that the Alligator Logos causes a likelihood of confusion will be binding on the TTAB's cancellation proceeding. *See B & B Hardware*, 135 S. Ct. at 1303 (issue preclusion occurs "when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim"); *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723

F.2d 1566, 1569-1573 (Fed. Cir. 1983) ("Under the doctrine of issue preclusion, traditionally called 'collateral estoppel' issues which are actually and necessarily determined by a court of competent jurisdiction are conclusive in a subsequent suit involving the parties to the prior litigation." (quoting Restatement (Second) of Judgments § 27 (Am. Law. Inst. 1980))). "When a district court, as part of its judgment, decides an issue that overlaps with part of the TTAB's analysis, the TTAB gives preclusive effect to the court's judgment." *B & B Hardware*, 135 S. Ct. at 1305-06.

Accordingly, if Buc-ee's succeeds on its infringement claims in the trial court based on a likelihood of confusion, the TTAB will have no choice but to cancel the two Alligator Logo registrations. *See Mother's Rest.*, 723 F.2d at 1569 (affirming Board's decision that "the state court findings of confusing similarity and priority of use should be accorded collateral estoppel effect in the cancellation proceeding."). Defendants acknowledge as much. In their motion before the TTAB, Defendants argued that the district court's judgment will "be dipositive and binding upon the PTO." Reply Mot. Summ. J., Ex. A, ECF No. 89-1. The TTAB also anticipates issue preclusion and it is common practice for the TTAB to suspend its proceedings pending the outcome of a federal district court case. Trademark Trial and Appeal Board Manual of Procedure (TBMP) 510.02(a), 2016 WL 4165480 (3rd Ed. Rev. 3, June 2016). Here, Defendants moved to suspend the

TTAB proceeding and the TTAB has stayed the proceedings Buc-ee's instituted to cancel the Alligator Logos pending the outcome of this case.

It would waste judicial resources to require Buc-ee's to pursue its infringement claims in federal court, succeed, then take its likelihood of confusion judgment to the TTAB to cancel the registrations, only to then return to federal court to pursue its state law dilution claim. *Cf. Sanofi-Aventis*, 453 F. Supp. 2d at 855 n.10. Moreover, because Defendants moved to suspend the TTAB cancellation proceeding Buc-ee's was prevented from obtaining a ruling on the cancellation issue prior to disposition of this lawsuit. Reply Mot. Summ. J., Ex. A, ECF No. 89-1.

Because Buc-ee's is simultaneously seeking to cancel the federal registrations for the Alligator Logos, the federal registration defense does not bar the jury from considering Buc-ee's state law dilution claim if the jury finds for Buc-ee's on the infringement claim. Accordingly, the Court recommends Defendants be denied summary judgment on the state dilution claim.

If Buc-ee's does not succeed on the infringement claims, then the federal registration defense bars the state law dilution claim, subject to the restrictions set forth below.

## 2. The federal registration defense is limited

Buc-ee's alleges that Defendants have used unregistered variations of the Alligator Logos and, therefore, the federal registration defense would not bar its claim based on those uses. Buc-ee's also alleges that Defendants have used the Alligator Logos on goods that are not listed in the federal registration. Finally, Buc-ee's asserts that only Shepherd Retail can claim the benefit of the defense because it is the only recorded owner of the mark. All of these arguments have merit.

### a. The federal registration defense does not apply to unregistered variations or depictions of the mark

The statute controls whether the federal registration defense applies to variations of the registered mark. 15 U.S.C. § 1125(c)(6). "[T]here is a paucity of judicial authority directly on point" and only one case analyzed this issue. *Exxon Mobil Corp. v. FX Networks, LLC*, 39 F. Supp. 3d 868, 871 (S.D. Tex. 2014) (Hittner, J.).

In this case, FX Networks had a standard character form registration of the FXX mark. *FX Networks, LLC*, 39 F. Supp. 3d at 870-72. A "standard character mark makes no claim as to any particular font, style, color or size of display." *Id.* at 871.[7] Exxon challenged FX's use of the interlocking X design. *Id.* at 870. The

---

[7] Conversely, the Alligator Logs are "special form marks." Registration Nos. 5,010,931 and 4,446,867. A special form mark claims uniqueness in its "font style, color, or size of

13

issue before the court was whether FX's ownership of the standard character mark covered all unregistered stylized variations of these letters such that Exxon's state law dilution claim was barred. *Id.*

The court relied on the plain language of the statute to hold that the provision "preempts state dilution claims against a federally registered mark only 'with respect to that mark.'" *Id.* at 871 (citing *Tesfamichael v. Gonzales*, 411 F.3d 169, 173 (5th Cir. 2005). The relevant language of § 1125(c)(6) provides:

> The ownership by a person of a valid registration . . . on the principal register under this chapter shall be a complete bar to an action against that person, *with respect to that mark.*

15 U.S.C. § 1125(c)(6). The court found "'that mark' is a limiting phrase in reference to the specific mark that is the subject of the 'valid registration' mentioned earlier in the same sentence." *FX Networks*, 39 F. Supp. 3d at 872. The court concluded that the plain language of the statute "does not encompass unregistered stylized variations of a registered standard character mark. *Id.* Thus, Exxon's state law dilution claim was not barred.

Buc-ee's cites five examples showing that Defendants used variations of the two federally registered Alligator Logos that are different in color, do not include lettering, use different lettering, or place the lettering on other parts of mark. Resp.

---

display." *FX Networks*, 39 F. Supp. 3d at 871; 37 C.F.R. § 2.52(B) ("Applicants who seek to register a mark that includes a two or three-dimensional design; color; and/or words, letters, or numbers or the combination thereof in a particular font style or size must submit a special form drawing.").

Mot. Summ. J., pp. 11-14, ECF No. 85. Defendants argue that there is no material difference between the various uses of the two registered marks and claim it would be duplicative to register these marks. Mot. Summ. J., pp. 9-10, ECF No. 74-13. However, this argument ignores the plain language of the statute which provides a defense for use of "that mark." As the court found in *FX Networks*, the statutory language leaves no room for variations. *See* 15 U.S.C. § 1125(c)(6); *FX Networks*, 39 F. Supp. 3d at 871-72. Even if Defendants had the right to depict these marks as similar variations, the federal registration defense does not protect their usage. *Id*. Nothing prevents Defendants from registering each variation it wishes to protect against state law dilution. The federal registration defense does not protect these unregistered marks against a state law dilution claim. *Id*.

Defendants also argue that variations of the mark without the term "Choke Canyon Bar-B-Q" still bar the dilution claim because the PTO deemed this phrase merely descriptive when it registered the mark and required the owner to disclaim it. Mot. Summ. J., pp. 9-10, ECF No. 74-13. Defendants' misunderstand the purpose of a disclaimer. A disclaimer limits a registrant's rights in a mark, it does not expand them. In some circumstances, the PTO requires the registrant to disclaim part of the mark to show that it does not have rights to that individual component of the mark. Trademark Manual of Examining Procedure

§ 1202.02(c)(i)(A) (Jan. 2017 ed.) ("TMEP").[8] "The purpose of a disclaimer is to permit the registration of a mark that is registerable *as a whole*, but contains matter that would not itself be registerable alone." *McCarthy* § 19:63 (emphasis added). This practice "prevents any false impression that the registrant owns registered rights to the individual part that is disclaimed." *Id*.

Shepherd Retail has disclaimed the phrase "Choke Canyon Creek Bar-B-Q," which prevents it from claiming rights in this phrase while still allowing it to claim rights in the registration *as a whole*. *See* TMEP § 1202.02(c)(i)(A). Defendants cannot rely on this disclaimer to support their federal registration defense on a variation of the registered mark. An unregistered variation of a mark will not bar a state law dilution claim. *See* 15 U.S.C. § 1125(c)(6); *FX Networks*, 39 F. Supp. 3d at 872.

> b.  *The federal registration defense only applies to the goods and services listed in the registration*

Again, the statute controls whether the federal registration defense applies when an owner uses the registered mark on goods and services not listed in the registration. 15 U.S.C. § 1125(c)(6).

---

[8] Unregistrable components of a registrable mark typically include "the name of the goods or services, other matter that does not indicate source, matter that is merely descriptive or deceptively misdescriptive of the goods or services, or matter that is primarily geographically descriptive of the goods or services." TMEP § 1213.03(a).

Only one case has addressed whether the owner of a registered mark can be protected for using the mark on goods not listed in the registration. *See Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 745-46 (W.D. Tex. 2014). In *Amy's Ice Creams*, Amy's Kitchen had a federal registration for frozen vegetarian meals, vegetarian refried beans, candy bars, and cookies. *See* Registration Nos. 1,885,120; 2,465,620; 2,954,885; 4,951,498. Amy's Kitchen argued that these federal registrations protect its new products, not listed in the federal registration and for which Amy's Kitchen sought additional federal registrations, from state law dilution claims.

The court disagreed and held that the federal registration defense is limited to "situations where [the owner of the federally registered mark] used the marks on goods or services *actually described in the registration*." *Id.* (emphasis added). The court explained that a registrant should not be allowed to use a mark "on any good or service it wants and be immune from any state dilution claim because it has registrations in those marks." *Id*. Accordingly, the court denied summary judgment based on the federal registration defense for use on products not listed in the registration. *Id.*

The United States Supreme Court previously found that the usage list serves an important function to the PTO. *See B & B Hardware*, 135 S. Ct. at 1300. "The applicant's right to register must be made on the basis of the goods described in the

application." *Id.* (citing *McCarthy*, § 20:24). The PTO cannot register a mark if it "so resembles another mark as to be likely, when *used on or in connection with the goods of the applicant*, to cause confusion, or to cause mistake, or to deceive." *Id.* (quoting 15 U.S.C. § 1052(d)) (internal citations omitted). This list provides "public notice" to a new applicant to current registrants to potentially oppose the application under 15 U.S.C. § 1062. *See id.*

Furthermore, Defendants' use of the Alligator Logos on *goods* is not protected against Buc-ee's state law dilution claim because Defendants registered the logos as *service marks*, to be used in connection with the providing of services, not with the sale of goods. Mot. Summ. J., Ex. A, ECF No. 74-13 (certificates for Registration Nos. 4,446,867 and 5,010,931; are both "service marks").[9]

Defendants argue that their service mark registrations cover goods that it sells in its stores. However, a service mark and a trademark are two different concepts. A service mark identifies and distinguishes "the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. A trademark

---

[9] Registration No. 4,446,867 is registered to be used in connection with "retail gasoline supply services; retail store services featuring convenience store items and gasoline." Mot. Summ. J., Ex. A, ECF No. 74-13. Registration No. 5,010,931 is registered to be used in connection with "Restaurant services; Restaurant services featuring barbeque dishes and traditional Southern cuisine; Restaurant services, including sit-down service of food and take-out restaurant services; Restaurant services, namely, providing of food and beverages for consumption on and off the premises." *Id.*

identifies and distinguishes a person's goods. *Id.* A person can register a mark both as a trademark and a service mark. For example, Buc-ee's Registration No. 4,007,064 is both a trademark and service mark, and contains both listed services and an extensive list of the goods covered. In contrast, Defendants listed only services in their registrations, not goods. Defendants cannot now claim protection under the federal registration defense for goods that are not actually described in the Alligator Logos' registrations.

> c. *The federal registration defense applies to the owner of the mark*

Buc-ee's argues that Shepherd Retail alone can rely on the federal registration defense because it is the listed owner in the registration; but the other seven Defendants cannot rely on this defense because they are not the listed owners. Resp. Mot. Summ. J., pp. 10-11, ECF No. 85.[10]

The relevant statutory language provides:

> The ownership by a person of a valid registration . . . on the principal register under this chapter shall be a complete bar to an action against that person, with respect to that mark that is brought by another person . . . .

15 U.S.C. § 1125(c)(6). A person includes a corporation. The question here is whether it also includes the corporation's wholly owned subsidiaries. There is no

---

[10] The other seven Defendants are Blanco Restaurant, Inc.; Live Oak Retail, Inc.; Mariam, Inc., S.W. Retail, Inc.' Falfurrias Highway Foods, Inc.; Highway 46 Retail, Inc.; and Harlow Food, Inc. (referred to "the Remaining Defendants").

authority on point. The facts concerning ownership are necessary to determine who the proper applicant is for the registration and therefore the owner. *See McCarthy* § 16.37; TMEP 1201.03(b) ("Either a parent corporation or a subsidiary corporation may be the proper applicant, depending on the facts concerning ownership of the mark.").

Shepherd Retail is listed as the owner of the Alligator Logos on the principal register with the PTO. Mot. Summ. J., Ex. 1, ECF No. 74-1 (Registration 4,446,867[11] lists "title to be in Shepherd Retail;" Registration No. 5,010,931 lists "title to be in Registrant," and the Registrant was Shepherd Retail). The Remaining Defendants argue they are "wholly owned" subsidiaries of Shepherd Retail, and, as such, claim they too can assert the federal registration defense. Reply Mot. Summ. J., p. 3, ECF No. 89.

Here, the only evidence of ownership is the federal registration, which identifies Shepherd Retail as the current owner. The Remaining Defendants have failed to submit any other evidence of the facts of ownership or of their corporate structure. Therefore, the summary judgment evidence does not support the

---

[11] Live Oak apparently was the original registrant, ECF No. 74-1 at 3, but assigned it on February 10, 2016, to Shepherd Retail. PTO Trademark Status & Document Retrieval (TSDR) (viewable assignment document); ECF No. 74-1 at 2 (registration as of April 22, 2016, to Shepherd Retail).

Remaining Defendants' claim of ownership of the mark or Shepherd Retail's ownership of the Remaining Defendants.

Defendants also argue that Shepherd Retail licensed the Remaining Defendants to use the logos. Reply Mot. Summ. J., p. 3, ECF No. 89. The Remaining Defendants may be entitled to use the mark as licensees as a matter of contract, but this does not make them "owners of a valid registration" under 15 U.S.C. § 1125(c)(6). Under federal law, "a 'licensee' is known as a 'related company.'" *McCarthy* § 18:38. The Lanham Act does not equate being a related company as being an owner of a mark. For example, the Act defines a "related company" as "any person whose use of a mark is controlled by the *owner of the mark* with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1055; *see McCarthy*, § 18:38 (related company "does not denote any corporate ownership or affiliation . . . .").

Thus, Defendants have failed to establish that the Remaining Defendants are owners of the mark. Only Shepherd Retail is entitled to rely on the federal registration defense.

## B.    A Genuine Issue of Material Fact Exists as to Whether the Buc-ee's Marks Were Famous Prior to Defendants' First Use

A claim for dilution under Texas law is consistent with federal law, requiring proof of the same elements. Tex. Bus. & Com. Code § 16.103; *Galvotec Alloys, Inc. v. Gaus Anodes Int'l, LLC*, No. 7:13-cv-664, 2014 WL 6805458, at *10

(S.D. Tex. Dec. 2, 2014) (Crane, J.); *see* 15 U.S.C. § 1125(c). To establish a claim for dilution, the plaintiff must show that

> (1) it owns a famous and distinctive mark; (2) the defendant subsequently commenced using a mark in a manner that dilutes the plaintiff's mark; (3) the similarity between the plaintiff and defendant's marks gives rise to an association between the two marks; and (4) the association is likely to cause dilution by either impairing the distinctiveness of the plaintiff's mark (dilution by blurring) or harming the reputation of the plaintiff's mark (dilution by tarnishment).

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012); *Viacom Int'l Inc. v. IJR Capital Invs., LLC*, No. H-16-cv-257, 2017 WL 1037294, at *7 (S.D. Tex. Mar. 17, 2017) (Miller, J.). A plaintiff must also show that its mark was famous before the defendant began using the mark that allegedly dilutes the plaintiff's mark. Tex. Bus. Com. & Code § 16.103(a).

Defendants assert that Buc-ee's marks were not famous prior to their first use of the Alligator Logos. Mot. Summ. J., pp. 10-11, ECF No. 74-13. Specifically, they argue that Buc-ee's revenue in 2012 was only half of what was in 2015 and the Buc-ee's marks were not famous throughout Texas, because its stores were concentrated in the Houston area as of 2012. *Id.*

Determining whether a mark is "famous" is a factual inquiry where the court considers a non-exclusive list of four factors, including:

> (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party;

(2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state;

(3) the extent of actual recognition of the mark in this state; and

(4) whether the mark is registered in this state or in the United States Patent and Trademark Office.

*Id.*; *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (noting that the famous inquiry for a federal dilution claim is a factual question); *US Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-cv-2843, 2013 WL 4504754, at *21 (N.D. Tex. Aug. 20, 2013) ("there is no bright line rule for determining whether a mark is famous").[12]

Buc-ee's has submitted evidence of each factor to create an issue of fact as to whether its mark was famous prior to June 1, 2012, the date Defendants first used the Alligator Logos. *See US Risk Ins. Grp.*, 2013 WL 4504754, at *21.

First, Buc-ee's has offered evidence in support of the sweeping reach of recognition and publicity of its marks. Buc-ee's has received third-party publicity on television, radio, newspaper and the internet. Resp. Mot. Summ. J., Exs. 7-8, ECF No. 85-8, 85-9 (examples of publicity). Over two hundred and fifty thousand people have "liked" Buc-ee's on Facebook. *Id.* Ex. 9, ECF No. 85-10 (Facebook page); *see Emerald City Mgmt., LLC v. Kahn*, No. 4:14-cv-358, 2016 WL 98751,

---

[12] "[A] mark is considered famous if the mark is widely recognized by the public throughout [Texas] or in a geographic area in [Texas] as a designation of source of the goods or services of the mark's owner." Tex. Bus. & Com. Code § 16.103(b).

at *10 (E.D. Tex. Jan. 8, 2016) (noting that the plaintiff had advertised over the internet, YouTube, and Facebook).

In analyzing this factor, the Court can also consider the plaintiff's advertising efforts to expand the mark's reach and publicity. *See US Risk Ins. Grp.*, 2013 WL 4504754, at *21 ("most relevant [to the fame determination is] the time and money that Plaintiff has spent marketing, promoting, and selling its products and services to insurance agents and companies across the country."). Buc-ee's has spent over a million dollars advertising and marketing and has displayed the mark on many billboards since 2011.[13] Resp. Mot. Summ. J., Ex. 4-5, ECF Nos. 85-5, 85-6 (advertising figures since 2001); *see Emerald City*, 2016 WL 98751, at *10 (noting that the plaintiff had advertised its mark on a variety of internet websites and has a database of approximately 8,000 potential customers). Defendants even acknowledge the presence of this factor. *See* Mot. Summ. J., p.14, ECF No. 74-13 ("It cannot be denied that Plaintiff has developed the Buc-ee's Marks and the recognition associated with them through extensive time, labor, skill, and money.").

Second, Buc-ee's, has submitted evidence of extensive sales of goods and services using the Buc-ee's marks. Without even considering its highest grossing

---

[13] The exact marketing and advertising figures are sealed and the Court speaks of these figures in general terms.

product, fuel, since 2001, Buc-ee's has earned many millions of dollars. Resp. Mot. Summ. J., Ex. 12, ECF No. 85-13 (spreadsheet listing non-fuel sales at each location); *see Emerald City*, 2016 WL 98751, at *10 (finding sufficient to defeat summary judgment regarding the extent of sales and recognition with the plaintiff having performed 700 events in over six years); *Dall. Cowboys*, 616 F Supp. 2d at 631 (noting that the plaintiff had made "millions of dollars selling" items with the logo at issue for federal dilution claim).

Third, Buc-ee's has offered evidence of actual recognition in the form of a survey that shows a high percentage of adults in "Texas who are familiar with Buc-ee's logo," which is a higher recognition rate than many national brands. Resp. Mot. Summ. J., Ex. 22, p. 2, 17, ECF No. 85 (Expert Report of Alex Simonson, Ph.D.).

Fourth, Buc-ee's has two PTO registrations that were registered before 2012. Resp. Mot. Summ. J., Ex. 3 pp. 2-3, ECF No. 85 (U.S. Registration Nos. 3,246,893 and 4,007,064 registered before 2012); *US Risk Ins. Grp.*, 2013 WL 4504754, at *21 (the fact that Plaintiffs mark is federally registered found to be important in the determining fame).

Fifth, although not a listed factor in the statute, other courts have considered a defendant's admission that a plaintiff's mark is famous. *See Dall. Cowboys,* 616 F. Supp. 2d at 643. Defendants acknowledge that Buc-ee's marks are currently

famous, thereby suggesting that they were famous in 2012, a few years prior. Mot. Summ. J., p. 10, ECF No. 74-13.

Defendants argue that the Buc-ee's marks were not famous prior to 2012 outside the Houston area. Mot. Summ. J., p. 10-11, ECF No. 74-13. Buc-ee's has offered evidence supporting state-wide fame. It has a customer survey report that shows a high state-wide consumer recognition rate of the Buc-ee's logo by name. Resp. Mot. Summ. J., Ex. 22 p. 13, ECF No. 85 (expert report). Further, Buc-ee's had two locations in the San Antonio area as of 2003. *Id.* Ex. 12 (detailing high sales figures from these two stores). Moreover, consumers visiting Buc-ee's stores often travel long distances, expanding the scope of recognition of the marks beyond the precise location of its stores. *See* Resp. Mot. Summ. J., Ex. 23 (study detailing that a list of ten stores have "significant sales outside of a 100 mile radius").

Accordingly, Buc-ee's has produced competent evidence to show that a fact issue exists with respect to whether its marks were famous prior to Defendants' first use. *See Emerald City*, 2016 WL 98751, at *10 (denying the defendant summary judgment based on the presence of a high level of sales and recognition and the fact that the plaintiff owned a Texas registration for the mark); *US Risk Ins. Grp.*, 2013 WL 4504754, at *21 (denying summary judgment after finding two factors present).

**C.    A Genuine Issue of Material Fact Prevents Granting Summary Judgment on the Unjust Enrichment Claim**

Defendants argue they are entitled to summary judgment on Buc-ee's unjust enrichment claim because Buc-ee's has no evidence of Defendants' fraud, duress, or taking undue advantage or that Buc-ee's was damaged after 2012. Defendants assert, to the contrary, that Buc-ee's profits have continually increased. Mot. Summ. J., p. 12, ECF No. 74-13.

The Fifth Circuit recently identified three essential factors to establish unjust enrichment in a trademark infringement case: did the defendants willfully infringe on the plaintiff's trademark, did the defendants attempt to palm off its goods as those of the plaintiff's, and did the plaintiff lose sales to defendants. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 462 (5th Cir. 2017) (finding that none of these factors were present and reversing unjust enrichment jury award). While no one factor is a prerequisite, lack of evidence of all three will defeat a claim. *Id.*

In response to Defendants' motion, Buc-ee's argues that Defendants' intentionally infringed Buc-ee's marks and used Buc-ee's reputation and goodwill to their advantage. *See* Resp. Mot. Summ. J., Ex. 14 41:18-25, 42:1-14, ECF No. 85-15 (deposition testimony of graphic designer of Alligator Logos, concerning the progression of the design of the mark showing transformation that incorporates components of Buc-ee's marks); Ex. 24, ECF No. 85-25 (expert report regarding

survey results). This is sufficient to raise fact questions for the jury. *See, e.g.*, *Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 694-96, 697 (5th Cir. 1992) (analyzed evidence to support findings of a palming off and goodwill, as well as jury instruction on willfulness).

Notwithstanding that it earns a profit, Buc-ee's claims it could have earned a greater profit if not for the harm it suffered. Resp. Mot. Summ. J., pp. 22-23, ECF No. 85. Buc-ee's profitability does not mean that sales were not in fact diverted to Defendants. Further, at the summary judgment stage, a plaintiff need only show it was damaged; it is the jury's role to determine the amount of damages that a plaintiff has incurred. *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 20 (5th Cir. 1974) ("There is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount.").

Accordingly, Defendants are not entitled to summary judgment because they have not met their burden to show that there is no genuine issue as to any material fact on the unjust enrichment claim. *See Kee*, 247 F.3d at 210.

## D.   Misappropriation of a Trademark is Not a Cause of Action Under Texas Law

Buc-ee's has alleged a claim for misappropriation of a trademark under Texas common law. Third Am. Compl., ¶¶ 80-81, ECF No. 78. Defendants argue that they have not gained any unfair or special advantage and that Buc-ee's has not

suffered any commercial harm. Mot. Summ. J., pp. 14-15, ECF No. 74-13. Buc-

ee's responds to these arguments. Resp. Mot. Summ. J., pp. 24-25.

The Parties have not cited to[14] and the Court has not found any authority that

suggests that a plaintiff, under Texas common law, can maintain a cause of action

for misappropriation of a trademark.[15]

> Misappropriation is a branch of the tort of unfair competition which
> involves the appropriation and use by the defendant, in competition
> with the plaintiff, of a unique pecuniary interest created by the
> plaintiff through the expenditure of labor, skill and money.

*Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 368 (5th Cir. 2000) (citing *Conan*

*Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 156 (5th Cir. 1985)). It serves to

"protect the labor—the so-called 'sweat equity'—that goes into creating a work or

a product." *PrevMED, Inc. v. MNM-1997, Inc.*, No. H-15-cv-2856, 2017 WL

---

[14] The Parties cite the following cases: *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F. Supp. 2d
866, 883 (N.D. Tex. 2013) (misappropriation of a trade secret); *Schwimmer v. Presidio
Indus. LLC*, No. 3:10-cv-2213, 2011 WL 13089398, at *5 (N.D. Tex. Feb. 11, 2011)
(misappropriation of a trade secret); *Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*,
765 F. Supp. 2d 884, 902 (S.D. Tex. 2011) (Ellison, J.) (misappropriation of a product);
*Healthpoint, Ltd. v. River's Edge Pharm., LLC*, No. 03-cv-984, 2005 WL 356839, at *7
(W.D. Tex. Feb. 14, 2005) (misappropriation of a product); *Schuchart & Assocs., Prof'l
Eng'rs v. Solo Serve Corp.*, 540 F. Supp. 928, 943-944 (W.D. Tex. 1982) (misappropriation
of drawings and specifications for architectural designs); *U.S. Sporting Prod., Inc. v. Johnny
Stewart Game Calls, Inc.*, 865 S.W.2d 214, 216 (Tex. App.—Waco 1993, writ denied)
(audio recordings of bird sounds sold to hunters is a form of misappropriation of a product).

[15] Trademark infringement has been analyzed in cases discussing insurance coverage under
commercial general liability (CGL) polices to determine if infringement fits within the
policy's coverage for "misappropriation of advertising ideas." *See, e.g., Sport Supply Grp.,
Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 455 (5th Cir. 2003). These cases analyze the
language of the policy to determine whether coverage exists and have no bearing on whether
misappropriation of a trademark is a cause of action. *See, e.g., Bay Elec. Supply, Inc. v.
Travelers Lloyds Ins. Co.*, 61 F. Supp. 2d 611, 615 (S.D. Tex. 1999) (Kent, J.).

785656, at *21 (S.D. Tex. Feb. 28, 2017) (Lake, J.) (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 788 (5th Cir. 1999)) (internal citations omitted).

The leading treatise on trademark and unfair competition law cautions against finding a cause of action for misappropriation based on alleged trademark violations. *McCarthy* § 10.47. As Professor McCarthy explains, "misappropriation is a state common law, judge-made offshoot of the general law of unfair competition" and invoked when the plaintiff creates a valuable "thing" that the defendant has "appropriated" at little cost. *Id.* The "thing" that the plaintiff seeks to protect must not otherwise be protected "(1) by federal patent or copyright legislation or (2) by one of the traditional common law theories of unfair competition, such as trademark infringement or breach of confidential relationship." *Id.* §§ 10.47-48; *accord Mueller Co. v. U.S. Pipe & Foundry Co.*, No. 03-cv-170, 2003 WL 22272135, at *3 (D.N.H. Oct. 2, 2003) ("the misappropriation theory [] has been reserved for the vindication of commercial rights left unprotected by trademark principles").

> [T]he misappropriation doctrine should not be used in ordinary trademark infringement cases to short-circuit trademark law's carefully crafted standards of protection. That is, a plaintiff should not be permitted to dispense with the traditional requirements for trademark protection by blithely claiming that defendant "misappropriated" some symbol of plaintiff which may or may not be capable of trademark protection. Like claiming that a trademark has

been "converted,"[16] "misappropriation" law is not suited for the task of sorting out infringing uses from legitimate uses of marks. Trademark law was specifically constructed to balance the private and public interests inherent in commercial symbols: the unfair competition tort of "misappropriation" was not. It is the wrong tool for the job.

*Id.* § 10:50; *accord* Restatement (Third) of Unfair Competition § 38 cmt. e (1995).

Numerous other courts have rejected the theory of misappropriation of a trademark under state common law.[17]

Accordingly, Buc-ee's misappropriation of a trademark claim under Texas common law is not a valid theory of recovery under Texas law. *See McCarthy*, § 10:50. Buc-ee's interests in its marks are sufficiently protected in trademark law and its misappropriation claim should be dismissed.

---

[16] Texas does not recognize a cause of action for conversion of a trademark. *E.g., Beardmore v. Jacobsen*, 131 F. Supp. 3d 656, 667 (S.D. Tex. 2015) (Harmon, J.).

[17] *See Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 794 (9th Cir. 1981) (California law); *Bd. of Dirs. Sapphire Bay Condos. W. v. Simpson*, No. 04-cv-62, 2014 WL 4067175, at *11 (D.V.I. Aug. 13, 2014), *aff'd*, 641 F. App'x 113 (3d Cir. 2015); *Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1127 (D. Nev. 2013); *Mueller*, 2003 WL 22272135, at *4-5; *DeGidio v. W. Grp. Corp.*, 205 F. Supp. 2d 806, 810 (N.D. Ohio 2002), *aff'd*, 355 F.3d 506 (6th Cir. 2004); *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 598 n.2 (D.N.J. 2000); *Heirs of Estate of Jenkins v. Paramount Pictures Corp.*, 90 F. Supp. 2d 706, 714 n.26 (E.D. Va. 2000), *aff'd sub nom. Evans v. Paramount Pictures Corp.*, 7 F. App'x 270 (4th Cir. 2001); *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 861 (E.D. Pa. 1985); *but see ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 860 (N.Y. 2007) (recognizing the cause of action of misappropriation of a mark and goodwill of another as a branch of unfair competition under New York common law).

## IV.    CONCLUSION

The Court **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **DENIED** with respect to the state law dilution claim, but to the extent that Buc-ee's does not succeed at trial on its infringement claims and the Court bars the state law dilution claims based on the federal registration defense, the Court **RECOMMENDS** that the defense be limited as described in § III.A.2. The Court also **RECOMMENDS** that Defendants' Motion for Partial Summary Judgment be **DENIED** with respect to the state law unjust enrichment claim and **GRANTED** as to the state law misappropriation claim.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(l)(C); Fed R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on July 21, 2017, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**