UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BUC-EE'S, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-03704 |
| | § | |
| AMJAD PANJWANI, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is an intellectual property case between companies that provide convenience store and gas station merchandise and services in Texas. Pending before the Court is Defendants' Motion for Dismissal for Attempting to Influence the Testimony of a Witness (Doc. No. 157). After considering the motion, response, reply, and applicable law, the Court denies Defendants' motion.

I. **BACKGROUND**

Plaintiff Buc-ee's, Ltd. ("Buc-ee's") brings claims against Defendants Shepherd Retail, Inc., Blanco Restaurant, Inc., Live Oak Retail, Inc., Harlow Food, Inc., Mariam, Inc., S.W. Retail Inc., Falfurrias Highway Foods, Inc., and Highway 46 Retail, Inc. (collectively, "Defendants") for trademark dilution, trademark infringement, false designation of origin, unjust enrichment, and unfair competition. (Doc. No. 78 ¶ 1.)

Buc-ee's' claims arise out of Defendants' use of an alligator logo, which Buc-ee's alleges is confusingly similar to Buc-ee's' trademarks. (Doc. No. 78 ¶ 2.) Buc-ee's uses a logo consisting of a cartoon beaver in front of a yellow circle for its Buc-ee's convenience stores and

1

gas stations. Defendants use a logo consisting of a cartoon alligator in front of a yellow circle for their Choke Canyon convenience stores, gas stations, and restaurants.

Defendants move the Court to dismiss all of Buc-ee's' claims with prejudice for allegedly attempting to influence a witness's testimony by filing a separate lawsuit against that witness. (Doc. No. 157 at 19-20.) The witness whom Buc-ee's allegedly attempted to influence is Buck's, a company based in Omaha, Nebraska, which owns a convenience store chain named Bucky's and which testified through a designated corporate representative. Buck's and Buc-ee's previously litigated disputes related to their word trademarks, which resulted in settlement in 2009.

Defendants in this case deposed a representative of Buck's regarding the authenticity of a copy of the 2009 settlement agreement between Buck's and Buc-ee's (hereinafter the "Buck's Settlement Agreement"). (Doc. No. 157-15 at 3:12-4:12; Doc. No. 157-3.) The Buck's Settlement Agreement resolved a trademark opposition and litigation about their respective uses of the trademarks "Bucky's" and "Buc-ee's" in the connection with retail store services featuring convenience store items and gasoline. The parties agreed that each may use and register their respective trademark. (Doc. No. 157-3 at 2.) Defendants argue that the Buck's Settlement Agreement and the underlying trademark dispute are relevant to this case because they undermine Buc-ee's' claim that its mark is famous and they are relevant to Defendants' laches defense. (Doc. No. 170 at 3-4.) The deposition of the Buck's representative in this case occurred in October of 2016. The deposition was taken by written questions and is two pages long. (Doc. No. 157-15.)

Buc-ee's filed a trademark infringement lawsuit against Buck's and three other defendants on March 17, 2017 (hereinafter the "Buck's Lawsuit"). (*Buc-ee's, Ltd. v. Bucks, Inc.*,

Case No. 4:17-cv-00818 (S.D. Tex.).)[1] In the Buck's Lawsuit, Buc-ee's alleges that Buck's and the other defendants seek to operate convenience stores and gas stations in Texas using the Bucky's mark, and that such activity infringes on the Buc-ee's mark. Buck's' counsel has informed Defendants' counsel that Buck's will not testify in this proceeding so long as the Buck's Lawsuit is pending. (Doc. No. 192-7.)

Defendants argue that the Buck's Lawsuit is frivolous and allege that Buc-ee's filed the Buck's Lawsuit to prevent Buck's from testifying as a fact witness in this case. Plaintiff argues that Defendants' motion for sanctions is itself frivolous and requests that the Court sanction Defendants for filing their motion.

## II. LEGAL STANDARD

### A. Sanctions Under the Inherent Authority of the Court

Courts have certain implied, inherent powers to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31 (1962). One of the inherent powers of courts is "the power to punish for contempts." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991). Conduct that may warrant sanction under the Court's inherent powers includes acting in bad faith, vexatiously, wantonly, or for oppressive reasons. *Id.* at 45-46. The Court may "fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45.

---

[1] The district court severed Buc-ee's' claims against Buck's and transferred them to the District of Nebraska (*Buc-ee's, Ltd. v. Bucks, Inc.*, Case No. 8:17-cv-00287 (D. Neb.)). Order, *Buc-ee's, Ltd. v. Bucks, Inc.*, No. 4:17-cv-00818 (S.D. Tex. Aug. 2, 2017). The court applied the forum selection clause in the Buck's Settlement Agreement as the basis of severance and transfer. The other defendants were not signatories to the forum selection clause, so Buc-ee's' claims against them remain in the Southern District of Texas.

The Court's inherent powers are not without limit. "Inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. The threshold for the use of sanctions under the Court's inherent powers is high. The powers may only be exercised "if essential to preserve the authority of the court" and if the chosen sanction uses the least possible power adequate to achieve the purpose of the sanctions. *Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996). Dismissal of a lawsuit is a sanction within the court's discretion, but it is a "particularly severe sanction." *Chambers*, 501 U.S. at 45. Courts may use dismissal as a sanction only when it is necessary to deter "bad faith or willful abuse of the judicial process." *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995).

### B. Sanctions Under Rule 11

Rule 11 of the Federal Rules of Civil Procedure requires an attorney or pro se litigant to conduct a reasonable inquiry into the relevant law and facts before signing pleadings, written motions, or other documents, and it prescribes sanctions for violating these obligations. Fed. R. Civ. P. 11. Under Rule 11, a signatory to a pleading, motion, or document is certifying to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that

> "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information."

Fed. R. Civ. P. 11(b).

In assessing whether an attorney has complied with Rule 11, courts look at whether the attorney's certification "complies with an objective standard of reasonableness under the circumstances." *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994) (quoting *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992)).

Courts may impose sanctions for violations of Rule 11(b) after notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(c)(1). Courts should use "the sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose." *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 878 (5th Cir. 1988); *see also* Fed. R. Civ. P. 11(c)(4).

### III.   ANALYSIS

#### A. Defendants' Motion for Sanctions

Sanctions are appropriate where a party or his counsel has attempted to influence a witness's testimony. *Weibrecht v. S. Illinois Transfer, Inc.*, 241 F.3d 875, 884 (7th Cir. 2001), *as amended on denial of reh'g* (Mar. 27, 2001); *see also Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993) (affirming sanctions against counsel who attempted to dissuade witnesses from providing testimony and cooperating with opposing party's attorney).

Defendants do not offer direct evidence of witness tampering in this case. Instead, Defendants present a theory that the Buck's Lawsuit is frivolous and was filed soon after Defendants deposed a representative of Buck's, and thus that Buc-ee's filed the Buck's Lawsuit to influence a witness. As set forth below, this theory is insufficient to support a finding that Buc-ee's acted with an improper purpose.

Defendants spend much of their briefing arguing that the Buck's Lawsuit is frivolous. The frivolity of a complaint filed in a separate action is not grounds for sanctions by this Court in

5

this action. The Court's inherent power to sanction arises from the need of courts "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43. The validity of the Buck's Lawsuit is only relevant to this Court if the suit's alleged lack of merit, when combined with other facts, shows intent to interfere with the Buck's witness.

Defendants argue that the Buck's Lawsuit is frivolous because Buck's' use of its marks is permitted by the Buck's Settlement Agreement, the filing of the Buck's Lawsuit violates terms of the Buck's Settlement Agreement, and Buc-ee's lacks standing (Doc. No. 157 at 5-10.) Buck's may indeed have a valid defense against Buc-ee's in the Buck's Lawsuit based on the Buck's Settlement Agreement. Order at 8-9, *Buc-ee's, Ltd. v. Bucks, Inc.*, No. 4:17-cv-00818 (S.D. Tex. Aug. 2, 2017). The Court need not decide the merits of the Buck's Lawsuit, and simply finds that it is not so clearly frivolous that it could only have been filed for the improper purpose of intimidating a witness in this case.

Even if the legal viability of the Buck's Lawsuit is questionable, that does not sustain an inference that the purpose of the lawsuit was to interfere with a witness in this case. In its Buck's Lawsuit complaint, Buc-ee's alleges that Buck's is moving into markets where Buc-ee's operates and members of the public are allegedly confused about the competing marks. (Doc. No. 157-5 at 4-6.) It is equally, if not more, likely that Buc-ee's filed the Buck's Lawsuit to stop Buck's from using the name "Bucky's" in geographic areas in which Buc-ee's operates than that Buc-ee's filed the lawsuit to affect witness testimony. Indeed, Buc-ee's actively enforces its marks, including through litigation. (*See* Doc. No. 157-8; 157-9.)

The only evidence of intent to interfere with a witness that Defendants proffer, other than the alleged frivolity of the Buck's Lawsuit, is the timing of the Buck's Lawsuit. Defendants

6

allege that Buc-ee's filed the Buck's Lawsuit approximately ten months after the Buck's expansion that was at issue became public. (Doc. No. 157 at 14.) Buc-ee's filed the Buck's Lawsuit approximately four months after Defendants deposed Buck's. (Doc. Nos. 157-5, 157-15.) Defendants find this timing to be suspicious, and argue that Buc-ee's would have filed the lawsuit sooner if it genuinely had claims against the Buck's expansion, which formed the basis of the Buck's Lawsuit. Since Buc-ee's waited to file the Buck's Lawsuit until after Defendants deposed Buck's, Defendants conclude that the filing was meant to deter Buck's from testifying.

It is unlikely that Buc-ee's filed a lawsuit against Buck's and numerous additional defendants, and is pursuing a case in two forums, for the sole purpose of keeping Buck's from testifying in this case. The inference of intentional interference with a witness is particularly weak in light of the minimal role of Buck's in this case. The Buck's testimony is far from core to Defendants' case theory. The Buck's deposition was a brief, written deposition consisting only of testimony to authenticate the Buck's Settlement Agreement between Buck's and Buc-Ee's. Defendants have argued that the Buck's Settlement Agreement and prior Buck's litigation are relevant to show lack of distinctiveness of the Buc-Ee's name, confusion among survey respondents, and Buc-ee's' litigation practices as related to Defendants' laches defense. A motion to limit testimony regarding Buck's is currently pending. (*See* Doc. No. 155; Minute Entry dated September 13, 2017.) The Court finds Defendants' theory to be tenuous, and the minimal circumstantial evidence of timing is insufficient to find that Plaintiff has engaged in witness interference or other bad faith conduct.

### B. Plaintiff's Request for Sanctions

Plaintiff asks the Court to sanction Defendants for filing their motion for sanctions based on alleged witness tampering. (Doc. No. 182 at 14.) Under Federal Rule of Civil Procedure 11,

7

an attorney may be sanctioned for filing a motion in which the legal contentions are not warranted by existing law or the factual contentions have no evidentiary support. Fed. R. Civ. Proc. 11(c)(1). Defendants have not violated Rule 11. Interference with a witness is sanctionable under existing law. Although the Court did not find Defendants' evidence sufficient to find witness interference, Defendants have offered some evidentiary support for their factual contentions, such as the Buck's Lawsuit and Buck's' unwillingness to testify in this case while the Buck's Lawsuit is pending. Plaintiff's request for sanctions is therefore denied.

## IV. CONCLUSION

The Court hereby **DENIES** Defendants' motion for dismissal for attempting to influence the testimony of a witness (Doc. No. 157).

**IT IS SO ORDERED.**

Signed at Houston, Texas on this 21st day of November, 2017.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE